IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHANGHAI MEIHAO ELECTRIC INC., <br><br> Plaintiff, <br><br> v. <br><br> LEVITON MANUFACTURING COMPANY, INC., <br><br> Defendant | ) ) ) ) ) ) ) Civil Action No. ) ) ) ) ) ) |

## COMPLAINT AND REQUEST FOR DECLARATORY RELIEF

Plaintiff, Shanghai Meihao Electric Inc. ("Meihao"), by its attorneys, for its Complaint against Defendant, Leviton Manufacturing Company, Inc. ("Leviton"), alleges as follows:

### NATURE OF THE ACTION

1. This is an action for a declaratory judgment that U.S. Patent No. 6,864,766 (the "766 patent") is not infringed by Meihao, is invalid, and/or is unenforceable.

### THE PARTIES

2. Meihao is a corporation organized and existing under the laws of the People's Republic of China, having its principal place of business at No. 58 Shahe Road, Jiangqiao Town, Jiading Borough, Shanghai, China, 201803. Meihao manufactures electrical devices, including the products at issue, ground-fault circuit interrupters ("GFCIs") equipped with reverse wiring protection ("RW-GFCIs"), which are sold in the United States, including within the District of Maryland.

3.   On information and belief, Leviton is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 59-25 Little Neck Parkway, Little Neck, New York 11362. On information and belief, Leviton manufactures and sells electrical devices, including GFCIs.

## JURISDICTION AND VENUE

4.   The claims asserted in this Complaint are brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, and arise under the patent laws of the United States, 35 U.S.C. §§100, *et seq.*

5.   This Court has jurisdiction over the claims asserted in this Complaint under 28 U.S.C. §§1331 and 1338.

6.   On information and belief, Leviton does business throughout the United States, including within the District of Maryland.

7.   Venue is proper in this Judicial District under 28 U.S.C. §1391 (b) and (c).

## FACTUAL BACKGROUND

8.   On information and belief, the '766 patent, entitled "Circuit Interrupting Device with Reverse Wiring Protection" was issued on March 8, 2005, and has been assigned to Leviton. A copy of the '766 patent is attached as Exhibit A.

9.   The '766 patent identifies Nicholas L. DiSalvo and William R. Ziegler as the inventors of the claimed subject matter and Leviton Manufacturing Co., Inc. of Little Neck, New York, as the Assignee.

10. The '766 patent identifies attorney Paul J. Sutton, Esq. as the "Attorney, Agent, or Firm" prosecuting the application which matured into the '766 Patent. Mr. Sutton is the lead counsel for Leviton in Shanghai Meihao v. Leviton, Civil Action No. 02137-AMD, currently pending in this Court.

11. The '766 patent issued from U.S. Patent Application Serial No. 10/827,093 (the "'093 application"), which was filed on April 19, 2004.

12. The '093 application was filed with a "Petition to Make Special" based on claims of actual infringement pursuant to 37 C.F.R. § 1.102(d) and Manual of Patent Examining Procedure ("MPEP") § 708.02 Item II.

13. The '093 application included a Declaration of Barry Magidoff in support of the Petition to Make Special. Mr. Magidoff is counsel for Leviton in Shanghai Meihao v. Leviton, Civil Action No. 02137-AMD, currently pending in this Court. In his Declaration, Mr. Magidoff identified the infringing product to be that of the Designer's Edge ("TDE") and/or Nicor. Based on a circuit diagram attached to the Declaration, these products are not manufactured by Shanghai Meihao Electric Inc. The Petition to Make Special did not identify or disclose to the U.S. Patent and Trademark Office ("PTO") that four of the parent patents to which the '093 application claims priority, i.e., U.S. Patent Nos. 6,437,953; 6,246,558; 6,282,070; and 6,040,967, were involved in various litigations around the country, including Shanghai Meihao v. Leviton, Civil Action No. 02137-AMD, currently pending in this Court..

14. During prosecution, Leviton's attorneys filed two Information Disclosure Statements, one executed by Barry Magidoff, and the other by Claude Narcisse. Neither of these Information Disclosure Statements listed prior art raised in the litigations involving the parent

3

patents to the '093 application, nor did they inform or disclose to the PTO that the parent patents were involved in various litigations around the country.

15.  On information and belief, at no time during the prosecution of the '093 application did any of Leviton's attorneys, including Mr. Magidoff, Mr. Narcisse, and Mr. Sutton, or anyone at Leviton inform the PTO that the patents to which the '093 application claims priority, i.e., U.S. Patent Nos. 6,437,953; 6,246,558; 6,282,070; and 6,040,967, were involved in a number of litigations around the country in which allegations of inequitable conduct, fraud on the PTO, misjoinder of inventors, violation of the duty to disclose prior art, and patent invalidity were raised.

16.  The MPEP § 2001.06(c) specifically states that litigation involving, inter alia, questions of inventorship, prior art, allegations of fraud, inequitable conduct and violation of the duty to disclose **"must"** be brought to the attention of the PTO.

17.  On information and belief, the failure to notify the PTO of prior litigation, which was material to the examination of the '093 application, was done intentionally with the intent to deceive the PTO into expediting the '093 application.

18.  More than a year before filing the '093 application, Leviton filed U.S. Provisional Patent Application No. 60/444,469 (the "'469 provisional application").

19.  The '469 provisional application was entitled "Bridge Contact Mechanism For Circuit Interrupting Devices," and was filed on February 3, 2003.

20.  On October 22, 2003, Leviton filed U.S. Patent Application Serial No. 10/690,776 (the "Germain application"), which claims priority to the '469 provisional

application.

21. The Germain application is entitled "Circuit Interupting Device and System Utilizing Bridge Contact Mechanism and Reset Lockout," and names Frantz Germain, James Richter, David Herzfeld, Armando Calixto, David Chan, and Stephen Stewart as inventors. The Germain application claims the benefit of the '469 provisional application, filed on February 3, 2003, which also names Frantz Germain, James Richter, David Herzfeld, and Armando Calixto as inventors.

22. Neither Nicholas L. DiSalvo nor William R. Ziegler, the inventors of the '766 patent, the patent-in-suit, are named as inventors of the subject matter of the Germain application.

23. The '093 application (which corresponds to the '766 patent) and the Germain application have no common inventors and neither application claims priority to the other.

24. On information and belief, in preparing the '093 application and the Petition to Make Special on the basis of actual infringement, Leviton and/or its attorneys, copied the claim language of the Germain application and added it to the '093 application.

25. Claim 31 of the Germain application recites:

A circuit interrupting device comprising:

a first electrical conductor capable of being electrically connected to a source of electricity;

a second electrical conductor capable of conducting electrical current to a load when electrically connected to said first electrical conductor;

a third electrical conductor capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third electrical conductors are electrically isolated from each other;

**a movable bridge** electrically connected to the first electrical conductor, said at least one movable bridge capable of electrically connecting the first, second and third electrical conductors to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third electrical conductors upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third electrical conductors after said predetermined condition occurs.

26. Claim 1 of the '766 patent recites:

A circuit interrupting device comprising:

a first electrical conductor capable of being electrically connected to a source of electricity;

a second electrical conductor capable of conducting electrical current to a load when electrically connected to said first electrical conductor;

a third electrical conductor capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third electrical conductors are electrically isolated from each other;

**at least one movable bridge** electrically connected to the first electrical conductor, said at least one movable bridge capable of electrically connecting the first, second and third electrical conductors to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third electrical conductors upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third electrical conductors after said predetermined condition occurs.

27. Claim 31 of the Germain application differs from claim 1 of the '766 patent only by the substitution of "at least one movable bridge" in place of "a movable bridge."

28. Claim 42 of the Germain application recites:

6

A circuit interrupting device comprising:

a first pair of terminals capable of being electrically connected to a source of electricity;

a second pair of terminals capable of conducting electrical current to a load when electrically connected to said first pair of terminals;

a third pair of terminals capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third pair of terminals are electrically isolated from each other;

**a pair of movable bridges** electrically connected to the first pair of terminals, said at least one movable bridge being capable of electrically connecting the first, second and third pairs of terminals to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third pairs of terminals upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third pairs of terminals after said predetermined condition occurs.

29.    Claim 11 of the '766 patent recites:

A circuit interrupting device comprising:

a first pair of terminals capable of being electrically connected to a source of electricity;

a second pair of terminals capable of conducting electrical current to a load when electrically connected to said first pair of terminals;

a third pair of terminals capable of being electrically connected to user accessible plugs and/or receptacles where the first, second and third pair of terminals are electrically isolated from each other;

**at least one movable bridge** electrically connected to the first pair of terminals, said at least one movable bridge being capable of electrically connecting the first, second and third pairs of terminals to each other;

a circuit interrupting portion configured to cause electrical discontinuity between said first, second and third pairs of terminals upon the occurrence of a predetermined condition; and

a reset portion configured to reestablish electrical continuity between the first, second and third pairs of terminals after said predetermined condition occurs.

30.    Claim 42 of the Germain application differs from claim 11 of the '766

7

patent only by the substitution of "at least one movable bridge" in place of "a pair of movable bridges."

31. The dependent claims of the '766 patent have virtually identical language to dependent claims in the Germain application.

32. The claims of the Germain application and the '766 patent cover the same patentable invention, or an obvious variant of each other.

33. At no time during the prosecution of the '093 application did any of Leviton's attorneys, including Mr. Magidoff, Mr. Narcisse and Mr. Sutton, or anyone at Leviton, inform the PTO that the '093 application and the Germain application contained claims of identical scope and/or almost verbatim language.

34. The actual filing date of the '766 patent was about five months later than the actual filing date of the Germain application. In addition, the term "movable bridge" is nowhere found in the specification of the '766 patent. To the contrary, this term is found in the Germain application, which strongly suggests that Leviton copied the claims of the Germain application to those of the '766 patent, with the intent of improperly extending the priority date for the '766 patent back to August 20, 1999, the actual filing date for U.S. Patent No. 6,246,558.

35. The MPEP § 2001.06(b) requires that information regarding related applications must be brought to the attention of the examiner.

36. Under Federal Circuit precedent, under the "reasonable examiner" standard, an application is "highly material" to the prosecution of another if it could have conceivably served as the basis of a double patenting rejection.

37. The Germain application could have served as the basis for a double patenting rejection in view of the identical claim language, and thus was highly material to the

examination of the '766 patent.

38. On information and belief, the failure to disclose to the PTO the Germain application was done intentionally to deceive the PTO as to the origins of the claim language, the late date of the claimed subject matter, the lack of support to claim priority to earlier applications, the lack of a written description to support the claim language, and the failure to name the correct inventive entity, in order to obtain an early allowance.

39. The basic standard used to evaluate and certify all GFCIs is Underwriters Laboratories ("UL") Standard 943, titled "Ground Fault Circuit Interrupters." UL issued a revised standard for GFCIs, effective January 1, 2003.

40. Meihao manufactures RW-GFCIs in accordance with the newly revised UL standard and has received approval by UL for its RW-GFCIs.

41. On January 28, 2005, UL approved a new amendment to the 943 Standard, to be effective on July 28, 2006.

42. Leviton is and has been an active member of the Standards Technical Panel that reviews proposed amendments and changes to the 943 Standard, including the recently adopted amendments.

43. Underwriters' Laboratories ("UL") has a Patent Policy that requires companies, such as Leviton, to disclose the existence of any patents or patent applications, the use of which is included in a proposed UL/ANSI standard.

44. On information and belief, Leviton never disclosed to UL the existence of any of the patents in its portfolio, including the '093 application, despite its belief that it had claims drafted to cover implementation of the new UL 943 Standard.

45. On information and belief, Leviton's failure to disclose the existence of its

patents and patent applications, including the '093 application, was done intentionally with the hope that UL would adopt changes to the 943 Standard that would be covered by the claims drafted by Leviton.

46.  Universal Security Instruments, Inc. and USI Electric, Inc. (collectively "USI") are corporations organized and existing under the laws of the State of Maryland. USI is a customer of Meihao, and purchases and resells Meihao's RW-GFCIs in the State of Maryland and elsewhere.

47.  On or about March 31, 2005, Leviton sued USI in the United States District Court in the District of Maryland for infringement of the '766 patent. On information and belief, Leviton's allegations are based on USI's sales of Meihao's RW-GFCIs. A copy of the Complaint is attached as Exhibit B.

## CLAIM ONE - DECLARATORY JUDGMENT OF NONINFRINGEMENT, INVALIDITY AND UNENFORCEABILITY OF THE '767 PATENT

48.  Meihao incorporates by reference the allegations set forth above in Paragraphs 1-47, as if fully set forth herein.

49.  An actual controversy exists as to the infringement, validity, and enforceability of the '766 patent, and Leviton's actions have placed Meihao and its customers in reasonable apprehension of suit Unless Leviton is permanently enjoined, Leviton will continue to assert groundless charges of infringement and/or acts of enforcement or lawsuits based on the '766 patent against Meihao and those in privity with Meihao, including Meihao's customers and prospective customers.

50.  The claims of the '766 patent are not infringed by Meihao's RW-GFCIs.

51.     Meihao has the right to make, use, sell, and offer for sale its RW-GFCIs without a license from Leviton and free of any charge of infringement of any claim of the '766 patent.

52.     The claims of the '766 patent are invalid for failure to comply with one or more of the statutory requirements of 35 U.S.C. §§102, 103, 112 and/or 116.

53.     The claims of the '766 patent are unenforceable due to inequitable conduct on the part of Leviton and its attorneys for intentionally concealing material information from the PTO.

54.     The claims of the '766 patent are unenforceable due to inequitable conduct on the part of Leviton and its attorneys for filing a misleading declaration in support of a Petition to Make Special.

55.     The claims of the '766 patent are unenforceable due to inequitable conduct on the part of Leviton and its attorneys for intentionally misidentifying the inventive entity of the subject matter claimed.

56.     The claims of the '766 patent are unenforceable due to the inequitable conduct on the part of Leviton and its attorneys for intentionally concealing the existence of the Germain application and its materiality in view of the virtually identical claim language between the Germain application and the '766 patent, the clear double patenting problem it presented, and the fear that it would expose the lack of written description for the claims of the '766 patent.

57.     The claims of the '766 patent are unenforceable because, on information and belief, Leviton, in violation of the policies and practices of Underwriters Laboratories,

knowingly concealed and failed to disclose the existence of the application for the '766 patent to the public, UL, and member of the STP while new UL standards were being promulgated, while at the same time proposing changes to the UL standard that according to Leviton's infringement allegations would be covered by the claims of the '766 patent and failing to offer to license the '766 patent free of any royalty or on reasonable, non-discriminatory terms.

58. The claims of the '766 patent are unenforceable due to unclean hands, based on the facts recited above.

59. The claims of the '766 patent is unenforceable due to patent misuse based on the facts recited above.

## RELIEF REQUESTED

WHEREFORE, Meihao respectfully requests that the Court enter an Order and Judgment as follows:

A. that the Court declare that the making, using, selling, offering for sale and/or importation into the United States of the Meihao RW-GFCIs has not infringed and does not infringe any valid and enforceable claim of the '766 patent, or induce or contribute to the infringement of the '766 Patent;

B. that the Court enjoin Leviton from asserting the '766 patent against Meihao, its representatives, agents, customers and/or contractors, present and prospective;

C. that the Court declare this case an exceptional case under 35 U.S.C. §285;

D. that the Court award Meihao its reasonable attorneys' fees, expenses and costs; and

E. that the Court award such other and further relief as the Court may deem appropriate.

Respectfully submitted,

_____
Gary M. Hnath  (Bar No. 08964)
Fei-Fei Chao, Ph.D. (Bar No. 15884)
BINGHAM McCUTCHEN LLP
1120 20th Street, N.W., Suite 800
Washington, DC  20036
(202) 778-6150

Counsel for Shanghai Meihao Electric Inc.

Dated: May 6, 2005